Copy (6)

# JUDGE'S COPY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEVILLE M. RUSSELL,                    :
                   Petitioner      :      No. 1:CV-00-0536
                                    :

           v.                 :      (Judge Kane)
                                    :

IMMIGRATION AND NATURALIZATION         :
SERVICE,                               :
                   Respondent      :

FILED
HARRISBURG, PA

MAY 0 8 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

### RESPONSE TO HABEAS CORPUS PETITION

This is a habeas action brought under 28 U.S.C. §2241 by a pro
se alien, Neville M. Russell, a citizen of Jamaica, against the
Immigration and Naturalization Services ("INS"). Russell challenges
his detention pending deportation as constituting double jeopardy
and as being indefinite. This response is filed on behalf of the
INS in opposition to the petition for a writ of habeas corpus.

### Statement of the Case

Russell is a citizen of Jamaica who came to the United States
in July 1990 as a visitor for pleasure. Russell was permitted to
stay only for six months but he overstayed without authorization.
Exh. 1 (Notice to Appear).

Thereafter, Russell was convicted of various crimes, including
criminal possession of marijuana in the third degree. Exhs. 1-3.
On February 24, 1999, the INS detained Russell and charged him with
being removable (1) for remaining in the United States longer than
permitted, and (2) for having been convicted of a controlled
substance violation. See 8 U.S.C. §1227(a)(1)(B), (a)(2)(B)(i).
Exh. 1.

Russell admitted the allegations and on March 16, 1999, an

Immigration Judge ordered Russell deported to Jamaica. Exhs. 3-4. Russell did not appeal and the order of removal became final.

On April 19, 1999, and June 1, 1999, the INS requested the Jamaican Consulate to issue travel documents for Russell. When the INS did not hear back from the Consulate, on November 3, 1999, the INS requested its headquarters to assist in obtaining travel documents. Exhs. 5-7.

Not having obtained travel documents, the INS considered Russell for release on bond pending removal. Russell was provided notice of this process on January 5, 2000, with a file review to occur on February 5, 2000. Exhs. 8-9. The review actually occurred on February 12, 2000, with the Deportation Officer recommending detention due to his belief that Russell would be a flight risk. Exh. 10.

On April 15, 2000, the District Director decided to detain Russell. This notice was served on Russell on April 19, 2000. Exh. 11.

### Question Presented

Should the petition for a writ of habeas corpus be denied in that the Third Circuit has recently held that the detention of aliens for prolonged periods permitted by the relevant statutes and is constitutional if the INS provides individualized periodic review of the alien's eligibility for release on parole -- with Russell being provided that review?

### ARGUMENT

A.  **The Statutory and Regulatory Provisions Governing Detention Pending Deportation**.

Under 8 U.S.C. §1226(c) and §1231(a)(1),(2), the Attorney

General[1] must detain criminal aliens during removal proceedings and during the initial 90 days after the entry of a final order of removal. After the 90-day removal period, the Act allows the Attorney General to detain criminal aliens and any alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. §1231(a)(6). An alien seeking release from custody must demonstrate by clear and convincing evidence that he or she is not a threat to the community and is likely to comply with the removal order when it can be executed. Id.; 8 C.F.R. §241.4 (1998).

Apart from this regulatory process, the INS recently established its own policy guidelines that give long-term detainees automatic review of their custody status after the expiration of the removal period. See Ngo v. Immigration and Naturalization Service, 192 F.3d 390, 400-401 (3rd Cir. 1999)(Appendix). As the Third Circuit held, the statutory regime, the implementing regulations, and the policy guidelines embodied in the Interim Procedures provide long-term detainees with a continuing and fair opportunity to seek release from custody. See Ngo, 192 F.3d at 398-99.

In Ngo, the Third Circuit recognized that the Supreme Court has repeatedly held that immigration matters are controlled by the

---

[1]    The Act references the authority of the Attorney General, which has been duly delegated to the INS and other branches of the Executive Office for Immigration Review. 8 C.F.R. §§2.1, 100.2(a).

3

Government's political branches and are largely immune from judicial control. Ngo, 192 F.3d at 395-96. While observing that prior Supreme Court precedent upholding lengthy detention of excludable aliens has been "much criticized," id., at 396, and being itself critical of the "fiction" that "detention is not punishment," id. at 397-98, the Third Circuit recognized that Supreme Court precedent precluded the conclusion that aliens have a constitutional right to be free from prolonged detention. Id. at 395-98.

The Circuit then found that aliens with criminal backgrounds could be detained for lengthy periods provided that appropriate provisions for parole were available. Id. at 398. The Circuit further held that the Interim Procedures created by the INS, with its bi-annual reviews, including the opportunity for an annual personal interview, satisfied due process. Id. at 399-401. Accordingly, no alien is subject to permanent or indefinite detention, regardless of whether his country of origin is willing to acquiesce in his repatriation. See Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999); Barrera-Echavarria v. Rison, 44 F.3d 1441, 1450 (9th Cir.)(en banc).[2]

_____

[2] See also Ho v. Green, 204 F.3d 1045 (10th Cir. 2000); Parra v. Perryman, 172 F.3d 954, 958 (7th Cir. 1999); Guzman v. Tippy, 130 F.3d 64 (2nd Cir. 1997); Gisbert v. U.S. Attorney General, 988 F.2d 1437, 1447 (5th Cir. 1993); Alvarez-Mendez v. Stock, 941 F.2d 956 (9th Cir. 1991); Garcia-Mir v. Meese, 788 F.2d 1446 (11th Cir.); Palma v. Verdeyen, 676 F.2d 100, 103-104 (4th Cir. 1982); In re Mariel Cubans, 822 F.Supp. 192, 195-96 (M.D.Pa. 1993)(continued detention pending deportation does not violate aliens' due process

**B.  Russell' Rights Have Not Been Violated in Light of Ngo.**

With this explanation of the statutory and regulatory process in mind, we turn to Russell's claim that his continued detention pending deportation to Jamaica violates his constitutional rights. Preliminarily, we believe the Third Circuit's recent decision in Ngo, 192 F.3rd 390, ought to end this matter.  In that Russell has received the required custody review under Ngo, Russell's constitutional challenge to his detention has no merit.[3]

Nevertheless, we note that after issuing its Ngo decision, the Third Circuit amended its opinion to specify that its holding was confined to "excludable" aliens, offering "no views" on whether the holding would apply to "deportable" aliens.  192 F.3d at 398 n.7. Although we think this is a distinction without substance, plus inapplicable here in that Russell overstayed his time authorized to remain in the United States, we nevertheless address the distinction between excludable and deportable aliens and its inapplicability here.

**C.  Ngo Applies Equally to Deportable Aliens**

Aliens not formally admitted into the United States previously

---

rights).

[3] Russell claims that he is being punished twice in violation of the double jeopardy clause.  Detention of an alien is not punishment, see text at 12 & n.7, and, therefore, that claim has no merit.  Nor does Russell cite to any authority for his claim that the INS should not be able to detain him in a correctional facility.  We note that pretrial detainees in criminal cases that have not been convicted of anything can be housed in jails and that is not improper.

were known as "excludable" aliens because they were subject to exclusion proceedings.  Lawfully admitted aliens (lawful permanent resident aliens or LPRs) who later were sought to be removed from the United States were known as "deportable" aliens because they were subject to removal through deportation proceedings.  The immigration laws have now been changed to refer to exclusion and deportation proceedings as "removal" proceedings, with "excludable" aliens now referred to as "inadmissible" aliens.  Ngo, 192 F.3d at 394 n.4; Zadvydas v. Underdown, 185 F.3d 279, 289-97 (5th Cir. 1999).

Generally, "excludable" aliens are those aliens who seek to enter the United States but are ineligible to do so.  Because entry into the United States is a privilege and not a right, denial of entry is not a deprivation of a right subject to procedural due process.  Ngo, 192 F.3d at 395-96; Zadvydas, 185 F.3d at 294-95. Additionally, although the United States may "parole" excludable aliens into the country pending their return to their country of origin, this does not constitute formal "admission" and the alien remains an "excludable" alien (now known as an "inadmissible" alien) with no procedural rights in the removal process.  Ngo, 192 F.3d at 392 n.1.[4]

_____

[4] This parole concept for excludable aliens developed due to past travel practices when aliens would seek to enter the United States by sea.  In such cases, rather than forcing the boat to stay at sea, the United States would permit the boat to dock, let its passengers off, then continue on its way.  Allowing that courtesy did not constitute agreeing to the "admission" of the excludable

In contrast, aliens who seek entry into the United States may be granted leave to do so and may later become lawful permanent residents ("LPRs"). [We note that Russell did _not_ become a lawful permanent resident.]  As a result, LPRs develop an interest in remaining in the United States that entitles them to _limited_ procedural due process rights _before they can be removed_ from this country.  Zadvydas, 185 F.3d at 295.

But once a previously admitted alien or lawful permanent resident alien is given those procedural rights in his removal proceedings (previously known as deportation proceedings) and is ordered removed from the United States, that alien is then on the same footing as an alien never formally admitted into the United States.  In other words, once ordered removed, via the prior "exclusion" or "deportation" proceedings or now under "removal" proceedings, no alien has the right to remain in the United States pursuant to the United States' plenary powers to exclude aliens.[5]  Zadvydas, 185 F.3d at 295-97 ("Once the decision is made to deport

_____

alien.  This policy or fiction continues to this day for practical and/or humanitarian reasons.

[5] While both types of aliens have the right to be free from abuses that cannot be justified as being in furtherance of immigration goals, Zadvydas, 185 F.3d at 296, once found to be removable from the United States, neither type of alien has the right to remain at large in the United States.  See Wong Wing v. United States, 163 U.S. 228, 234-38 (1896)(while Congress has the constitutional power to exclude aliens from coming into the United States _and_ to deport those who previously entered the country with its assent, it is not constitutional to further compel the alien to perform hard labor before being deported).

a resident alien, then, there is little, if any, difference in the government's interest in effectuating deportation of a resident alien and expulsion of an excludable alien).  See also Adrong v. Immigration and Naturalization Service, No. CV-S-99-400-HDM, slip op. at 7 (D. Nev. Jan. 6, 2000)(attached)(once properly ordered removed, the interest in freedom from detention is the same whether the alien is was a resident or excludable); Doan v. Immigration and Naturalization Service, 78 F.Supp.2d 1101 (S.D.Cal. 2000); Puig v. Immigration and Naturalization Service, No. 3:CV-99-1928, slip op. at 7-8 (M.D.Pa. Jan. 24, 2000) (Report)(M.J. Smyser)(what satisfies due process for detention purposes as held in Ngo for excludable aliens satisfies due process for deportable aliens), adopted (M.D.Pa. Feb. 11, 2000)(attached).

The "private interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." Parra v. Perryman, 172 F.3d 954, 958 (7th Cir. 1999).  In this case, Russell ceased to be a lawful permanent resident and lawfully in the United States once his removal order became final.  See 8 C.F.R. §§ 1.1(p), 3.39, 241.1 (1998); Zadvydas, supra; Foroughi v. INS, 60 F.3d 570, 575-76 (9th Cir. 1995).  Having lost the right to remain in the United States, Russell effectively was assimilated to the status of an excludable alien, see Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 215 (1953)(former lawful permanent resident was assimilated to the status of an excludable alien), and had no right to remain at

8

liberty in the United States.[6]

Thus, regardless whether an inmate is excludable or deportable, the reasoning underlying <u>Ngo</u> requires that Russell' due process claim be rejected. Even if it did not, though, prior Supreme Court and numerous circuit decisions have recognized that aliens have extremely limited rights and the United States is permitted to detain them pending removal.

D.    <u>Congress's Plenary Powers Over Immigration Permit Detention</u>

Congress's near-complete power over immigration transcends the specific grant of authority in Article I, section 8 of the Constitution, and derives from the "inherent and inalienable right of every sovereign and independent nation" to determine which aliens it will admit or expel. <u>Fong Yue Ting v. United States</u>, 149 U.S. 698, 711 (1893). <u>See also</u> <u>INS v. Aguirre-Aguirre</u>, 119 S.Ct. 1439, 1445 (1999)("we have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context"); <u>Reno v. Flores</u>, 507 U.S. 292, 305 (1993) ("'For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.'")(quoting <u>Mathews v. Diaz</u>, 426 U.S. 67, 81 (1976)); <u>Landon v. Plasencia</u>, 459 U.S. 21, 34 (1982)("control over

_____

[6] <u>See also</u> Fong Yue Ting, 149 U.S. 698, 707 (1893)("The right of a nation to expel or deport foreigners who have not been naturalized ... is as absolute and unqualified, as the right to prohibit and prevent their entrance into the country.").

matters of immigration is a sovereign prerogative within the control of the executive and the legislature"); <u>Kleindienst v. Mandel</u>, 408 U.S. 753, 766-67 (1972); <u>Harisiades v. Shaughnessy</u>, 342 U.S. 580, 587-88 (1952).

"'The exclusion of aliens is a fundamental act of national sovereignty' that 'stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation.'" <u>Zadvydas</u>, 185 F.3d at 288 (quoting <u>United States ex rel. Knauff v. Shaughnessy</u>, 338 U.S. 537 (1950)). As the Supreme Court has made clear, "the *power to expel or exclude* aliens [is] a fundamental sovereign attribute exercised by the Government's political departments *largely immune* from judicial control." <u>Mezei</u>, 345 U.S. at 210 emphasis added). <u>See also</u> <u>Fiallo v. Bell</u>, 430 U.S. 787, 796 (1977) (the narrow scope of judicial review, if any, is a function of a policy choice implicating foreign relations with changing political and economic circumstances); <u>Harisiades</u>, 342 U.S. at 588-89 (observing that policy matters involving aliens are vitally and intricately interwoven with contemporary foreign relations and are largely immune to judicial review); <u>Fong Yue Ting</u>, 149 U.S. at 730 (the right to expel or deport aliens "is as absolute and unqualified as the right to prohibit and prevent their entrance into the country.").

The plenary power doctrine extends to immigration detention -- because the power to detain is a necessary element of the power to deport. <u>See</u> <u>Carlson v. Landon</u>, 342 U.S. 524, 538 (1952); <u>Wong</u>

10

Wing, 163 U.S. at 235; Clark v. Smith, 967 F.2d 1329, 1332 (9th Cir. 1992). Because detention is a necessary component of the deportation process, an alien's interest in being at liberty pending deportation is "narrow" and "circumscribed by considerations of the national interest." Doherty v. Thornburgh, 943 F.2d 204, 208, 209 (2nd Cir. 1991).

In accordance with these principles, immigration detention decisions of the Attorney General may be reviewed only to the extent of ascertaining the existence of a legitimate purpose. See Flores, 507 U.S. at 306 (holding that detention rule need only "meet the (unexacting) standard of rationally advancing some legitimate governmental purpose"); Carlson, 342 U.S. at 538, 542-46 (requiring only a "reasonable foundation" for Attorney General's custody decision). An immigration detention statute is constitutional if it is based upon a "facially legitimate and bona fide reason," Fiallo, 430 U.S. at 794-95 (1977); Mandel v. Kleindienst, 408 U.S. 753, 770 (1972), and once found, "courts will neither look behind the exercise of discretion, nor test it by balancing its justification against the constitutional interest asserted by those challenging the statute." Campos v. INS, 961 F.2d 309, 316 (1st Cir. 1992)(citing Fiallo, 430 U.S. at 794-95).[7]

---

[7] As noted by the Third Circuit in addressing Congress' ability to treat different groups of aliens differently, such laws trigger only a rational basis test that can rest solely on rational speculation rather than on empirical data. In these cases, the courts' role "is not to judge the wisdom or fairness of Congress's policy choices, but rather their constitutionality." DeSousa v.

Here, Congress has granted the Attorney General broad discretion to determine whether, and on what terms, an alien may be released pending deportation. Although many aliens view detention as a form of punishment, the *Supreme Court* has repeatedly held that detention, like deportation, is not punishment but, rather, is a necessary incident of enforcing immigration laws.[8]   Reno v. American-Arab Anti-Discrimination Committee, 119 S.Ct. 936, 947 (1999); INS v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984); Wong Wing, 163 U.S. at 235, 237-38 (1896).

Because immigration detention is not punishment, the Supreme Court has employed a rational basis standard in determining whether the detention is constitutional, i.e. the decision to detain an alien must be based on a "reasonable foundation."   Carlson, 342 U.S. at 540 n. 33.  The Supreme Court applied this standard in Flores, a case involving an INS regulation which mandated detention of deportable, unaccompanied juvenile aliens, concluding that detention for the purpose of protecting and promoting the welfare of the aliens met "the (unexacting) standard of rationally advancing some legitimate governmental purpose." Flores, 507 U.S.

_____

Reno, 190 F.3d 175, 184-85 (3rd Cir. 1999).  This deference is all the more required when viewed in the reality that statutes governing aliens are inextricably entwined with immigration policy, which is a constitutional power delegated to Congress, not the courts.  See Doan, slip op. at 7.

[8] While the Third Circuit appears to chide the Supreme Court on this point, stating that it is unrealistic to believe that INS detainees are not being punished, Ngo, 192 F.3d at 398-99, it is the Supreme Court's *majority* opinions that control this Court.

12

292, 306-309.

There is no question that 8 U.S.C. §1231(a)(6), passes constitutional muster.  The detention of criminal aliens  serves three primary, legitimate governmental objectives:  ensuring the aliens' availability for removal, safeguarding the welfare of the community, and maintaining the sovereignty of the United States. See Plasencia, 459 U.S. at 34 ("The government's interest in efficient administration of the immigration laws at the border ... is weighty.").

It also is important to note that §1231(a)(6) is not a mandatory detention provision but rather a discretionary detention provision.  It affords aliens a fair opportunity to seek release by establishing through a series of relevant factors that their release from custody would not endanger public safety or otherwise injure the United States.  Thus, §1231(a)(6) is a rational and legitimate means of protecting the public from criminal aliens and preventing them from absconding pending removal.

The post-order detention of criminal aliens also rationally advances the government's interest in controlling immigration policy and relations with foreign nations.  These grave foreign policy and separation of powers concerns have led the Supreme Court to eschew judicial intervention in the exclusion context.  The Supreme Court stated the matter succinctly in Mezei:

> That exclusion by the United States plus other nations'
> inhospitality results in present hardship cannot be
> ignored.  But, the times being what they are, Congress

13

> may well have felt that other countries ought not shift
> the onus to us; that an alien in respondent's position is
> no more ours than theirs. . . . [Mezei's] right to enter
> the United States depends on the Congressional will, and
> courts cannot substitute their judgment for the
> legislative mandate.

345 U.S. at 216.

Additionally, as the Ninth Circuit observed in <u>Barrera-</u>
<u>Echavarria</u>, if the courts interfered with the Attorney General's
statutory authority regarding the admission and parole of aliens in
the United States, it would divest the Executive Branch of its
"fundamental and sovereign" power to exclude or expel aliens.
44 F.3d at 1448 (citing <u>Carlson</u>, 342 U.S. at 537). For example, if
the courts determined that excludable aliens must be paroled after
a certain period of detention, "a foreign leader could . . . compel
us to grant physical admission via parole to any aliens he wished
by the simple expedient of sending them here and then refusing to
take them back." 44 F.3d at 1448. That was the situation that
arose during the Mariel Boatlift in 1980, when the Cuban government
sent a large number of its undesirables to the United States and
then refused to accept most of them back. The Ninth Circuit
correctly recognized that the determinations regarding parole of
excludable aliens were properly left to the Attorney General.
<u>Barrera</u>, 44 F.3d 1441.[9]

_____

[9]    <u>Accord</u> <u>Gisbert v. U.S. Attorney General</u>, 988 F.2d 1437,
1447 (5th Cir. 1993) ("The United States cannot be forced to violate
its national sovereignty in order to parole these aliens within its
borders merely because Cuba is dragging its feet in repatriating
them."); <u>Jean v. Nelson</u>, 727 F.2d 957, 975 (11th Cir. 1984) (en

As with the Mariel Cubans, the repatriation of criminal aliens to any country is as much a sensitive policy foreign policy concern as it is a domestic one, <u>Barrera</u>, 44 F.3d at 1448, and substantial judicial deference is thus owed to the political branches of government in its efforts to revolve this sensitive political problem.  <u>See Aguirre-Aguirre</u>, 119 S.Ct. at 1445 ("judicial deference in the immigration context is especially appropriate where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.").  Accordingly, it is proper to permit the detention of aliens pending deportation, even if such detention will last for a lengthy period of time.

<u>CONCLUSION</u>

For the above-stated reasons, respondents request this Court to deny the habeas petition with a certification that any appeal is frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

U.S. Attorney's Office
228 Walnut Street
P.O. Box 11754
Harrisburg, PA    17108-1754
717/221-4482

KATE L. MERSHIMER
Assistant U.S. Attorney

---

banc)("[T]his approach would ultimately result in our losing control over our borders.  A foreign leader could eventually compel us to grant physical admission via parole to any aliens he wished by the simple expedient of sending them here and then refusing to take them back."), <u>aff'd</u>, 472 U.S. 846 (1985).

PHN-11-2000  15:48
AN-06-2000  22:23        --    DOJ
AN-06-00 THU 01:40 PM



RECEIVED
U.S. ATTORNEY'S                    202 616 4975    P.02/10

**ENTERED AND SERVED**

JAN - 6 2000

CLERK U.S. DISTRICT COURT
DISTRICT OF NEVADA

BY _____ DEPUTY

JAN 6   4 47 PM '00     FILED

LAS VEGAS, NV          CO JAN -6 PM 12: 36

                       LANCE S. WILSON
                          CLERK
                       BY _____
                          DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THINH ADRONG,<br>SARA SAMMY VISAMOUNE,<br>ALFREDO ESTRADA,<br>SYNOURN MEACH,<br>CARLOS MEJIAS CARABALLO,<br>OUDONE MOUNSAVENG, and<br>KANGKIRI CHHUN, | CV-S-99-400-HDM (RLH)<br>CV-S-99-402-DWH (RLH)<br>CV-S-99-407-HDM (RLH)<br>CV-S-99-474-JBR (RLH)<br>CV-S-99-476-PMP (RLH)<br>CV-S-99-477-JBR (RLH)<br>CV-S-99-554-HDM (RLH) |
| Petitioners, | ORDER |
| vs. | |
| IMMIGRATION AND<br>NATURALIZATION SERVICE, | |
| Respondent. | |

**I.**        **Introduction**

Petitioners are a lead group selected from more than ninety (90) petitioners for writs of habeas corpus pursuant to 28 U.S.C. § 2241. All seek release from detention of the Immigration and Naturalization Service ("INS"). We determined that all of the petitions presented common legal issues. The parties briefed these issues, and the matter was submitted after oral argument. We have jurisdiction to consider these petitions. 28 U.S.C. § 2241 (1994); Magana-Pizano v. INS, Nos. 97-15678, 97-70384, 1999 WL 1249703, at *5-6 (9th Cir. Dec. 27, 1999).

///

JAN-11-2000  15:49              DOJ

AN-06-2000  22-35

IN-06-00 THU 01:40 PM              FAX NO. 0  ————        202 616 4975    P.03/10

1  II.        Background

2            Each lead Petitioner, and all Petitioners but one, have

3  come to the United States from one of four countries: Vietnam,

4  Cambodia, Laos, and Cuba. Some became lawful permanent residents.

5  Others, including Petitioner Carlos Mejias Caraballo, came to the

6  United States as refugees and never adjusted their status to lawful

7  permanent residence. The Petitioners have been ordered removed to

8  their native countries because they were convicted of deportable

9  offenses. The Petitioners did not appeal the orders of deportation

10 to the Board of Immigration Appeals or to the Court of Appeals.

11 Nevertheless, the INS has been unable to remove the Petitioners

12 despite the final order of removal because their countries of

13 origin will not receive them. Petitioners are currently being held

14 in State facilities in this district pending removal. Therefore,

15 Petitioners challenge their continued detention on both procedural

16 and substantive due process grounds.

17            Before 1996, aliens could not be detained pending

18 deportation more than six months once there was a final order of

19 deportation. Former INA § 242(c), 8 U.S.C. § 1252(c) (1994). In

20 1996, Congress enacted the Antiterrorism and Effective Death

21 Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214

22 (enacted on April 24, 1996), and the Illegal Immigration Reform and

23 Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110

24 Stat. 3009 (enacted on September 30, 1996). The IIRIRA provides

25 for the mandatory detention of criminal aliens during removal

26 proceedings and for ninety (90) days thereafter, during which time

27 removal should generally occur. INA § 241(a)(2), 8 U.S.C.

26 1231(a)(6) (1999). After the ninety-day period the Attorney

-2-

1  General retains discretion to detain the criminal aliens that she

2  determines are "a risk to the community or unlikely to comply with

3  the order of removal."   INA § 241(a)(2), 8 U.S.C. § 1231(a)(6)

4  (1999).   The Attorney General has delegated this discretionary

5  power for release to the INS District Directors.  See 8 C.F.R.

6  § 241.4 (1999); 8 C.F.R. § 236.1(d)(2)(ii) (1999).  Pursuant to

7  these regulations, and prior to release, the alien must show "by

8  clear and convincing evidence that the release would not pose a

9  danger to the community or a significant flight risk."  8 C.F.R.

10  § 241.4(a).

11  III.        Exhaustion of Administrative Remedies

12           The INS has several administrative procedures to review

13  an alien's status and to determine whether that alien should be

14  released.  An alien can request a review of custody status in

15  writing.  8 C.F.R. § 236.1(d)(2)(ii); 8 C.F.R. § 241.4.  The INS

16  has also started to automatically review aliens' custody status

17  according to procedures that the INS has not yet formally

18  promulgated as regulations ("Interim Rules").  See Chi Thon Ngo v.

19  INS, 192 F.3d 390, 400-01 (3d Cir. 1999) (Appendix).  All lead

20  Petitioners have made written requests for review of their custody.

21           Courts will not require exhaustion when the

22  administrative body has no power to determine certain issues, such

23  as the constitutionality of a statute or regulation.  However,

24  courts will often require exhaustion when the issues presented are

25  procedural errors that the administrative appeals process can

26  correct, even when the procedural errors might also violate the

27  constitutional guarantee of due process.  See Liu v. Waters, 55

28  F.3d 421, 425 (9th Cir. 1995)

1        Petitioners claim that their continued detention and the
2  custody review procedures violate the guarantes of the Due Process
3  Clause of the Fifth Amendment. The administrative appeals process
4  cannot determine this type of claim, and thus requiring exhaustion
5  of administrative remedies would serve no purpose. See, e.g., Tam
6  v. INS, 14 F. Supp. 2d 1184, 1189 (E.D. Cal. 1998) (citing Wang v.
7  Reno, 81 F.3d 808, 814-15 (9th Cir. 1996)).

8  IV.      Due Process

9        The Petitioners suggested for the first time at oral
10  argument that three prior Ninth Circuit decisions require the
11  issuance of writs in this case. Wolck v. Weedin, 58 F.2d 928 (9th
12  Cir. 1932); Saksagansky v. Weedin, 53 F.2d 13 (9th Cir. 1931);
13  Caranica v. Nagle, 28 F.2d 955 (9th Cir. 1928). While the court in
14  each of these cases stated that if the immigration authorities
15  could not promptly effect the deportation, the aliens were to be
16  released, the court did not ground its decision on constitutional
17  due process. Instead, the statute that the court relied on
18  contained no authorization for immigration authorities to detain an
19  alien after the entry of a final order of deportation. Former 8
20  U.S.C. § 156 (1940). Therefore, we conclude that these cases are
21  not controlling on the issues currently before us.

22        Analysis of whether government action violates the
23  protections of the Due Process Clause of the Fifth Amendment
24  requires us to determine if the interest that Petitioners propose
25  is a fundamental right or protected liberty interest. Reno v.
26  Flores, 507 U.S. 292, 301-02 (1993). Our definition of the
27  proposed interest must be careful and restrained. Id. at 302.
28  Here, the proposed interest is the right to be free from

JAN-11-2000  15:50
AN-06-2000  22:56         DOJ
AN-06-00 THU 01:42 PM                     · · ·
                                              202 616 4975    P.06/10

1  immigration detention pending deportation, when the INS cannot
2  effect prompt deportation.  If we find that there is a fundamental
3  right or protected liberty interest, then any INS infringements
4  upon that interest must be narrowly tailored to serve a compelling
5  governmental interest.  Id.  If there is no protected liberty
6  interest, then any INS infringements upon that interest must be
7  rationally related to a legitimate governmental interest.  Id. at
8  305.

9          A.        Substantive Due Process

10         In Barrera-Echavarria v. Rison, a case involving a Cuban
11  who came to the United States in the Mariel boatlift and who was an
12  excludable alien, the Ninth Circuit concluded that "applicable
13  Supreme Court precedent squarely precludes a conclusion that
14  [excludable aliens] have a constitutional right to be free from
15  detention, even for an extended time."  44 F.3d 1441, 1449 (9th
16  Cir. 1995).  The court noted that the case did not involve "the
17  constitutionality of 'indefinite' or 'permanent' detention with no
18  prospect of release", and that "Barrera's case continues to be
19  reviewed at least annually to determine if he meets established
20  criteria for granting parole."  Id. at 1450.  See also Chi Thon Ngo
21  v. INS, 192 F.3d 390 (3d Cir. 1999).  The holding in Barrera is
22  directly applicable to Petitioner Carlos Mejias Caraballo, who was
23  paroled into the United States as a refugee from Cuba and who has
24  never adjusted his status.  He has never been a lawful permanent
25  resident.  Therefore he has no protected liberty interest in being
26  free from immigration detention.  Id. at 1450.
27  ///
28  ///

-5-

JAN-11-2000  15:50                    DOJ
1-06-2000  22:--
4-06-00 THU 01:42 PM              FAX NO. --_____        202 616 4975    P.07/10

1        The remaining Petitioners urge us not to extend the
2   holding of Barrera to resident aliens as the Fifth Circuit in
3   Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999) has done.[1]
4        In Zadvydas, the Court of Appeals for the Fifth Circuit
5   held that there is no constitutional distinction between resident
6   aliens and excludable aliens "when both the right asserted and the
7   governmental interest are identical to those in the parallel case
8   of an excludable alien." 185 F.3d at 295.  Zadvydas did not—as the
9   Petitioners in this case do not—challenge the procedure used by the
10  Government in deciding to deport, or the final result.  The court
11  held that the interest in freedom from detention asserted by a
12  resident alien who was ordered deported is identical to the right
13  asserted by an excludable alien.  Id. at 297.  With respect to the
14  Government's interest, the court held:

15            "In the circumstances presented here, the
              national interest in effectuating deportation is
16            identical regardless of whether the alien was once
              resident or excludable.  When a former resident
17            alien is—with the adequate and unchallenged
              procedural due process to which his assertion of a
18            right to remain in the country entitles him—finally
              ordered deported, the decision has irrevocably been
19            made to expel him from the national community.
              Nothing remains but to effectuate this decision.
20            The need to expel such an alien is identical, from a
              national sovereignty perspective, to the need to
21            remove an excludable alien who has been finally and
              properly ordered returned to his county of origin."
22            Id. at 295.

23  ///

24

25  _____

26      [1] These Petitioners also cite Landon v. Plasencia, 459 U.S.
    21, 32 (1982) for the proposition that once an alien gains entry to
27  the United States, her constitutional status changes such that she
    is entitled to a fair hearing when threatened with deportation.
28  While true, this is inapposite; no Petitioner here claims that a
    fair deportation or removal hearing was denied.

-6-

1    We agree with the Fifth Circuit that once a final
2 deportation order is entered the Government's sovereignty interest
3 to detain and deport aliens, who have committed deportable
4 offenses, is the same whether the alien's status is resident or
5 excludable.  Clearly, the power to exclude aliens is a "fundamental
6 sovereign attribute exercised by the Government's political
7 departments largely immune from judicial control."  Shaughnessy v.
8 United States ex rel. Mezei, 345 U.S. 206, 210 (1953).  We also
9 agree that the interest in freedom from detention is the same
10 whether an alien is resident or excludable, once that alien has
11 been properly ordered removed.  Because Barrera holds that
12 excludable aliens have no such right to be free under the Due
13 Process Clause of the Fifth Amendment, we conclude that Petitioners
14 who were resident aliens also have no such right.

15    B.        Procedural Due Process.

16    There being no protected liberty interest, we examine
17 whether the procedures employed  by the INS have a rational
18 relationship to a legitimate governmental interest.  Flores, 507
19 U.S. at 305.  We find that they do.

20    It is the duty of the INS to remove Petitioners.  Until
21 they can do that, it is also their duty to keep Petitioners from
22 fleeing or endangering the community.  Where, as here, an
23 excludable or resident alien has not been deported after ninety
24 days, the Interim Rules provide for the review of the custody
25 status of the alien.  See Chi Thon Ngo, 193 F.3d at 400-01
26 (Appendix). These reviews are conducted after notice and afford th
27 alien the opportunity to be assisted by a representative and to
28 present oral and written information at the review in support of

JAN-11-2000  15:51

JAN-06-00 THU 01:43 rn                DOJ

                                                        202 616 4975    P.09/10

1  release.  The alien's criminal record does not create a presumption

2  against release.  If the decision is to continue detention, the

3  alien is entitled to receive a written statement of reasons for the

4  decision.  Moreover, the INS then reviews the alien's status semi-

5  annually—sooner if requested—by a process to which all lead

6  Petitioners already have availed themselves.[2]  Id.; see also 8

7  C.F.R. § 241.4.

8           The Court finds these procedures have a rational

9  relationship to a legitimate government interest and therefore do

10 not offend procedural due process.

11 V.          International Law/Treaties

12          Petitioners also argue that their continued detention

13 violates international law.  It is well settled, however, that a

14 controlling legislative or executive act, or a controlling judicial

15 decision, displaces international law.  Barrera, 44 F.3d at 1451

16 (citing The Paquette Habana, 175 U.S. 637, 700 (1900).  Legislation

17 authorizes the Attorney General to detain Petitioners.  8 U.S.C. §

18 1231(a)(6).  Moreover, Barrera is a controlling judicial decision.

19 Therefore, international law has been displaced.

20 ///

21 ///

22 ///

23 ///

24 ///

25 _____

26    [2] At oral argument, Petitioners' counsel reported anecdotally
   that he had attended some custody reviews and believed that the
27 District Directors or other officers of the INS were not following
   the Interim Rules.  Even if true, it is not necessarily common to
28 all Petitioners and therefore is outside the embrace of this Order.

                            -8-

1  VI.          Conclusion

2          For the foregoing reasons the petitions are denied

3  without prejudice to any subsequent claims that the INS has not

4  followed its own procedures.

5          DATED this 6th day of _____ Jan _____, 2000.

6

7

8  HOWARD D. McKIBBEN
   Chief United States District Judge

9

10

11  PHILIP M. PRO
    United States District Judge

12

13

14  DAVID W. HAGEN
    United States District Judge

15

16

17  JOHNNIE B. RAWLINSON
    United States District Judge

18

19

20  LLOYD D. GEORGE
    United States District Judge

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCISCO PEREZ PUIG,              :        CIVIL NO. 3:CV-99-1928
                                   :
              Petitioner           :        (Judge Munley)
                                   :
        v.                         :        (Magistrate Judge Smyser)
                                   :
IMMIGRATION AND NATURALIZATION     :
SERVICE,                           :
                                   :        **FILED**
              Respondent           :        HARRISBURG, PA

                                            JAN 2 4 2000

              **REPORT AND RECOMMENDATION**    MARY E. D'ANDREA, CLERK
                                            Per _____
                                                    Deputy Clerk


        On November 1, 1999, the petitioner, an alien in the

custody of the Immigration and Naturalization Service (INS),

filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.  The petitioner is a citizen of Cuba who is

subject to an order of deportation.  The petitioner has been in

the custody of the INS since July 17, 1997.  The petitioner

claims that his continued detention in INS custody violates his

constitutional rights.


        By an Order dated November 15, 1999, the respondent was

ordered to show cause on or before December 6, 1999, why the

petitioner should not be granted habeas corpus relief.   The

Order of November 15, 1999, also provided that the petitioner

may file a reply brief within ten days after the filing of the

respondent's response.   On December 6, 1999, the respondent

filed a response to the petition.   After requesting and

receiving two extensions of time, the petitioner filed a reply

on January 18, 2000.

        The petitioner claims that since Cuba will not take him

his detention is indefinite and in violation of his right to due

process.

        The United States Court of Appeals for the Third Circuit

recently addressed the issue of the prolonged detention of

criminal aliens when the country of origin refuses to allow the

return of such aliens.   *Ngo v. INS*, 192 F.3d 390 (3d Cir. 1999).

Ngo was a native of Vietnam who had been in INS custody since

about the middle of 1995.   *Id.* at 392.   Ngo contended that since

Vietnam would not take him back he was subject to virtually

indefinite detention in violation of due process.   *Id.* at 392-93.

2

The INS had denied Ngo parole on a number of occasions. *Id.* at 393.

The Third Circuit reasoned and held:

> We therefore hold that excludable aliens with criminal records as specified in the Immigration Act may be detained for lengthy periods when removal is beyond the control of the INS, provided that appropriate provisions for parole are available. When detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable. The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.

> Measures must be taken to assess the risk of flight and danger to the community on a current basis. The stakes are high and we emphasize that grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens.

> For example, the petitioner in this case was repeatedly denied parole by INS officials based on no more than a reading of his file that listed years-old convictions for firearm, attempted robbery, and bail jumping offenses. No inquiry was made to ascertain, for example, whether the bail jumping offense was the result of a lack of notice, misunderstanding, or an affirmative effort to avoid apprehension. The

3

AO 72A

INS made no effort to determine if such conduct
was presently likely to be repeated or whether
it could be discouraged by requiring appropriate
surety. Through at least four denials of parole,
the INS continued to cite to the petitioner's
now nearly ten-year old convictions as
justification to confine him.

We do not suggest that these convictions
are no longer relevant. Due process is not
satisfied, however, by rubberstamp denials based
on temporally distant offenses. The process due
even to excludable aliens requires an
opportunity for an evaluation of the
individual's current threat to the community and
his risk of flight.

It is extremely unlikely that the
petitioner's detention will be permanent.
Diplomatic efforts with Vietnam are underway,
albeit at a speed approximating the flow of cold
molasses. Although the progress is agonizingly
slow, it nonetheless represents movement toward
the petitioner's ultimate repatriation. He has,
however, been detained in a prison setting for
more than four years after being found by state
authorities to be suitable for release into the
community following his criminal convictions. To
presume dangerousness to the community and risk
of flight based solely on his past record does
not satisfy due process.

After oral argument on this case, the INS
announced detailed Interim Rules for detainees
such as petitioner, and its intention to
promulgate regulations to the same effect.
These rules have some similarities to those
available for the Mariel Cubans. The Interim
Rules include (1) written notice to the alien
thirty days prior to the custody review advising

4

that he may present information supporting a
release; (2) the right to representation by
counsel or other individuals; (3) the
opportunity for an annual personal interview;
(4) written explanations for a custody decision;
(5) the opportunity for review by INS
headquarters; (6) reviews every six months; (7)
a refusal to presume continued detention based
on criminal history; and other provisions, as
quoted in the Appendix attached to this opinion.

We have reviewed these rules carefully and
conclude that conscientiously applied, they
provide reasonable assurance of fair
consideration of a petitioner's application for
parole pending removal. We are aware that in a
similar case, a five-judge District Court in the
Western District of Washington required that
detainees receive a hearing before an
immigration judge with a right of appeal to the
Bureau of Immigration Appeals. Phan v. Reno, ---
F.Supp.2d ----, Nos. C98-234Z, C99-177C,
C99-185R, C99-341WD, C99-151L, 1999 WL 521980,
at *7 (W.D.Wash. July 9, 1999). That Court noted
its dissatisfaction with earlier INS review
procedures, reciting criticism that "Directors
simply relied on the aliens' past criminal
history and the fact that they were facing
removal from the United States, summarily
concluding that the aliens posed such risks and
denying them release." Id. We agree that such
superficial review is not satisfactory and does
not afford due process.

The Interim Rules, subsequently announced
by the INS, appear on their face to satisfy
Phan's objections. Among other things, the rules
require an individualized analysis of the
alien's eligibility for parole, present danger
to society and willingness to comply with the

5

removal order. Moreover, they do not result in
placing additional cases on the already
overloaded dockets of immigration judges.

The Interim Rules apply to petitioner,
regardless of whether one concludes that he is
being detained under the former or present
versions of the Immigration Act. Our reading of
the Interim Rules suggests that they will
encourage good faith review. So long as
petitioner will receive searching periodic
reviews, the prospect of indefinite detention
without hope for parole will be eliminated. In
these circumstances, due process will be
satisfied.

We do not intend to create a new legal
fiction that allows for de facto indefinite
detention based upon reviews that are
comprehensive in theory but perfunctory in fact.
Thus, if experience should show that our initial
reaction to the Interim Rules or eventual
permanent regulations was too sanguine, there
will be time enough to consider the more
extensive methods suggested by the Phan Court.

The petitioner has not yet received the
rigorous review of his eligibility for parole
that due process requires.

Accordingly, the order of the District
Court will be reversed and the case remanded
with directions that the petition for a writ of
habeas corpus be granted and the petitioner
released unless within 30 days the INS begins
the review process for petitioner under the
Interim Rules set out in the Appendix to this
opinion (or under permanent regulations that are
at least as favorable to him). We neither
express nor intimate any views as to whether

6

> petitioner should be released on parole as a
> result of review under the Interim Rules.

*Id.* at 398-99 (as amended by slip order filed on December 30,
1999)(footnote omitted).

The petitioner argues that *Ngo* does not control this
case because the alien in *Ngo* was an excludable alien whereas
the petitioner in this case is a resident alien.  The petitioner
contends that as a resident alien he is entitled to greater
constitutional protection than an excludable alien.

The petitioner is correct that *Ngo* dealt only with an
excludable alien.  By way of a slip order dated December 30,
1999, the Court in *Ngo* added a footnote to its opinion which
reads: "Our holding is confined to excludable aliens.  We
express no views on the situation where deportable aliens are
involved." 192 F.3d at 398 n.7 (as amended by slip order filed
Dec. 30, 1999).

Although a resident alien may be entitled to greater
procedural rights than an excludable alien with respect to the

7

decision whether or not to order the alien removed from the United States, once the decision to deport a resident alien is final, no distinction exists between the rights of a resident alien and an alien ordered removed as excludable. *Zadvydas v. Underdown*, 185 F.3d 279, 297 (5th Cir. 1999)(holding that "the government may detain a resident alien based on either danger to the community or risk of flight while good faith efforts to effectuate the alien's deportation continue and reasonable parole and periodic review procedures are in place."). Thus, we conclude that in the context of detention pending deportation what satisfies due process with respect to an excludable alien, such as in *Ngo*, satisfies due process with respect to a deportable alien.

The respondent states that the petitioner's case is currently being reviewed pursuant to the Interim Rules found in *Ngo* to satisfy due process. Accordingly, we conclude that the petitioner is receiving due process. It will be recommended that the petition for a writ of habeas corpus be denied.

8

AO 72A

Based on the foregoing, it is recommended that the petition for a writ of habeas corpus be denied and that the case file be closed.

J. Andrew Smyser
Magistrate Judge

Dated: January 24, 2000.

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCISCO PEREZ PUIG,            :
      Petitioner            :

    v.            :    NO. 3:99-CV-1928
          :

IMMIGRATION AND NATURALIZATION   :    (Judge Munley)
SERVICE,            :
      Respondent            :

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

FILED
SCRANTON

FEB 1 1 2000

PER _____

DEPUTY CLERK

## ORDER

AND NOW, to wit, this _11TH_ day of February 2000, we have before us for disposition

Magistrate Judge J. Andrew Smyser's report and recommendation which proposes that the petition for a

writ of habeas corpus be denied. No objections to the report and recommendation have been filed, and

the time for such filing has passed. Therefore, we must determine whether a review of the record

evidences plain error or manifest injustice. See e.g. Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir.

1983); Fed.R.Civ.Pro. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the

court need only satisfy itself that there is no clear error on the face of the record to accept the

recommendation"); and 28 U.S.C. § 636(b)(1).

    After a review of the record, we find neither a clear error on the face of the record nor a manifest

injustice, and therefore, we shall adopt the report and recommendation.

    1) The magistrate's report and recommendation [13-1] is hereby **ADOPTED**;

    2) The petition for writ of habeas corpus [1-1] is **DENIED**; and

    3) The Clerk of Court is directed to close this case.

                                     **BY THE COURT:**

                                     **JUDGE JAMES M. MUNLEY**
                                     **United States District Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEVILLE M. RUSSELL,                   :
                        Petitioner    :    No. 1:CV-00-0536
                                      :
              v.                      :    (Judge Kane)
                                      :
IMMIGRATION AND NATURALIZATION        :
SERVICE,                              :
                        Respondent    :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 8th day of May, 2000, she served a copy of the attached

### RESPONSE TO HABEAS CORPUS PETITION

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

        Neville M. Russell, 53311
        C/O York County Prison
        3400 Concord Road
        York, PA 17402


                        _____
                        CINDY J. LONG
                        Legal Secretary